IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL SPELLMAN SELTZ, EXECUTOR OF THE ESTATE OF HARRY J. SPELLMAN; SUMNER R. BEMIS; GEORGENE BEMIS; RONALD R, BICKEL; JUDY D. BICKEL; CLAYTON L. BLAUSER; CONNIE L. BLAUSER; ALMA LEE BRITT; KATHLEEN C. BARRETT, EXECUTOR OF THE ESTATE OF WARREN R. CAPENOS; BARRETT N. CLARK; MARCIA L. GORDAN; JOHN L. ERWIN; DIANNA J. ERWIN; ROBERT R. EVANS; ROBERT E. EXLEY; PAMELA J. EXLEY; ALFRED L. FREEMAN; ROBYN D. FREEMAN; FLORENCE R. GEIBEL; DAVID M. GRONER;  SUSAN J. GRONER; CLARENCE R. GUILINGER; JANICE R. GUILINGER; MALCOLM L. GUISTE; MICHAEL P. HUTCHINSON; BETH A. HUTCHINSON; LARRY E. KEVERLINE; PAMELA J. KEVERLINE; KAREN S. LATSHAW; STEPHEN J. LEWIS; BARBARA L. LEWIS; SCOTT MICHAEL LEWIS; DAVID J. MCCUNE III; LAUREN E. MCCUNE; MARC J. RASSCHAERT; RODGERS HOLDINGS; ROBERT D. SHAFFER; JOHN L. STEWART; EVELYN K. STEWART; JOHN P. YAKIMICK; BARBARA A. YAKIMICK; RICHARD W. ZINK<br>Plaintiffs<br>vs.<br><br>SWEPI LP; SWEPI LLC; SHELL ENTERPRISES LLC; SHELL ENERGY HOLDING GP, LLC; SHELL LEGACY HOLDINGS LLC; PERMIAN DELAWARE ENTERPRISES HOLDINGS LLC; SHELL USA, INC., CONOCOPHILLIPS COMPANY and PORTER WRIGHT MORRIS & ARTHUR LLP<br>Defendants | Docket #    1:23-CV-243<br><br><br>COMPLAINT<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Filed on behalf of the Plaintiffs by:<br>Joseph E. Altomare – PA ID #17156<br>10451 Venticello Dr. NW<br>Albuquerque, NM 87114<br>(814) 657-0350<br>jaltomar@msn.com |

1

# COMPLAINT

Plaintiffs, above captioned, state the following claims against the Defendants:

## Parties

1. Each of the above captioned plaintiffs is a citizen of the Commonwealth of Pennsylvania.

2. Defendant SWEPI, LP is a limited partnership organized under the laws of the State of Delaware, having one partner, Defendant Shell Energy Holding GP, LLC, its General Partner ("ENERGY"), a citizen of the State of Texas. SWEPI LLC is a limited liability company organized under the laws of the State of Texas and believed to be a citizen of the State of Texas.

3. SWEPI LP and/or SWEPI LLC are sometimes jointly hereinafter referred to jointly as SWEPI)

4. Defendants Shell Enterprises LLC ("ENTERPRISES"); Shell Legacy Holdings LLC ("LEGACY") and Permian Delaware Enterprises Holdings LLC ("PERMIAN") are limited liability companies organized under the laws of the State of Texas, each believed to be a citizen of the State of Texas.

5. Shell USA, Inc. ("SHELL") is a Delaware business corporation believed to be a citizen of Texas.

6. ConocoPhillips ("CONOCO") is a Delaware Corporation believed to be a citizen of Texas.

7. Defendant Porter Wright Morris & Arthur LLP ("PORTER WRIGHT") is an Ohio limited liability partnership believed to be a citizen of that state.

8. It is believed that at all pertinent times, SHELL USA was the penultimate domestic of parent of all of the Defendants, other than CONOCO.

9. It is believed that at all pertinent times, ENTERPRISES owned 100% of the membership interest in SWEPI LP and SWEPI LLC.

10. It is believed that at all pertinent times, SWEPI LLC owned 100% of the membership interest in LEGACY.

11. It is believed that at all pertinent times, LEGACY owned 100% of the membership interest in PERMIAN.

## Jurisdiction

12. The Diversity Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332.

## Facts Common to All Counts

13. On November 7, 2019, Plaintiffs commenced a civil action against SWEPI LP and its general partner in the United States District Court for the Western District of Pennsylvania, at Docket No. 1:19-cv-00326, alleging breach of contract (the "CONTRACT ACTION") and claiming, together with other plaintiffs, money damages of more than $16.5 Million, plus 6% interest in accordance with applicable Pennsylvania law. The CONTRACT ACTION remains pending.

14. On September 20, 2021, SWEPI LP's assets (the "ASSETS") had a value of at least $9.5 Billion.

15. On September 20, 2021, ENTERPRISES, as seller, and CONOCO, as purchaser, entered into a Purchase and Sale Agreement (the "PSA") whereby CONOCO agreed, subject to the fulfillment by ENTERPRISES of certain conditions precedent (the "CONDITIONS PRECEDENT"), to acquire a portion of SWEPI LP's ASSETS for the purchase price of $9.5 Billion.

16. The CONDITIONS PRECEDENT required ENTERPRISES to accomplish the following:

    a. to convert SWEPI LP into SWEPI LLC (the "Conversion") (Tex. Business Organizations Code § 10.106);

    b. to adopt and implement a plan of DIVISIONAL MERGER (the "DIVISIONAL MERGER") so as to divide SWEPI LLC into three separate entities (Tex. Business Organizations Code § 10.001, *et seq.*). This was accomplished by SWEPI LLC by dividing itself into LEGACY, PERMIAN, and itself as, the survivor of the DIVISIONAL MERGER, SWEPI LLC (collectively, the "DIVISIONAL ENTITIES");

    c. to cause SWEPI LLC to allocate to PERMIAN that portion of the ASSETS which CONOCO agreed to acquire by purchasing PERMIAN for $9.5 Billion.

17. All of the CONDITIONS PRECEDENT were fulfilled by ENTERPRISES and the PSA was consummated sometime on, or shortly after, November 16, 2021.

18. In accordance with the PSA the $9.5 Billion sale proceeds were paid to ENTERPRISES and the ownership of PERMIAN was transferred to CONOCO by ENTERPRISES.

19. No portion of the $9.5 Billion was paid to SWEPI.

20. It is believed that at all pertinent times, PORTER WRIGHT represented SHELL, ENTERPRISES, SWEPI LP, SWEPI LLC, HOLDING, LEGACY and PERMIAN (the "CLIENTS").

21. The CONDITIONS PRECEDENT are elements of an integrated scheme (the "INTEGRATED SCHEME") designed by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS.

22. The INTEGRATED SCHEME was designed by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS, for the purpose of stripping SWEPI of the ASSETS and facilitating the $9.5 Billion sale to CONOCO without having to pay the proceeds to SWEPI.

23. The INTEGRATED SCHEME was designed by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS, for the purpose of rendering SWEPI judgment proof.

24. The INTEGRATED SCHEME was designed by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS, to allow each of the DIVISIONAL ENTITIES the unrestricted right to transfer or upstream any part of its allocated portion of the ASSETS to an immediate parent, remote parent, another of the DIVISIONAL ENTITIES, or other entity.

25. The INTEGRATED SCHEME was designed by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS in order to deprive SWEPI of any reasonably equivalent value for the transfer of its ASSETS.

26. The CONDITIONS PRECEDENT inserted in the PSA by PORTER WRIGHT were not contract elements required by CONOCO.

27. The CONDITIONS PRECEDENT were inserted in the PSA by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS, for the purpose of feigning those conditions to be contract obligations required by CONOCO.

28. The CONDITIONS PRECEDENT were inserted in the PSA by PORTER WRIGHT, at the behest of and in collusion with its CLIENTS, for the purpose of creating the pretext that the CONDITIONS PRECEDENT were for the legitimate business purpose of fulfilling those requirements in order to obligate CONOCO to consummate the $9.5 Billion sale.

29. PORTER WRIGHT and its CLIENTS had no legitimate business purpose for inserting the CONDITIONS PRECEDENT into the PSA, and the pretext to the contrary is fraudulent.

30. The sale to CONOCO could have been accomplished by the direct transfer of the $9.5 of the ASSETS directly to CONOCO by SWEPI LP, or a subsidiary created for such purpose, without the fulfillment of the CONDITIONS PRECEDENT.

31. The only purpose for inserting the CONDITIONS PRECEDENT into the PSA was to strip SWEPI of the ASSETS and to sell $9.5 of them to CONOCO without payment of the proceeds to SWEPI LP.

32. CONOCO had no legitimate business reason to require that the CONDITIONS PRECEDENT be fulfilled prior to the attachment of its obligation to consummate the PSA.

33. CONOCO, knowing the purpose of the CONDITIONS PRECEDENT, tolerated their insertion into the PSA at the behest of, and in collusion with, PORTER WRIGHT and its CLIENTS.

34. CONOCO is not a good faith purchaser with no knowledge of the INTEGRATED SCHEME.

35. The implementation of the INTEGRATED SCHEME, for the sole purpose hereinabove described, is an abuse of applicable law.

36. The INTEGRATED SCHEME was intentionally and maliciously designed to deprive the Plaintiffs access to the ASSETS as a source of satisfaction of any judgment obtained.

37. The INTEGRATED SCHEME was intentionally and maliciously employed by Defendants as artifice to defraud the Plaintiffs.

38. The INTEGRATED SCHEME and its implementation were intentionally and maliciously concealed from the Plaintiffs by the Defendants for 1½ years.

39. The intentional and malicious concealment of the INTEGRATED SCHEME for 1½ years was intended to, and did, afforded PORTER WRIGHT and its CLIENTS time to implement the scheme and divest SWEPI of its assets without interference by the Plaintiffs.

40. The intentional and malicious concealment of the INTEGRATED SCHEME for 1½ years was intended to, and did hinder, delayed, and obstructed the Plaintiffs from any timely assessment of the impact and propriety the INTEGRATED SCHEME.

41. The intentional and malicious concealment of the INTEGRATED SCHEME for 1½ years was intended to and did hinder, delayed, and obstructed the Plaintiffs from undertaking a timely challenge to the INTEGRATED SCHEME.

42. The INTEGRATED SCHEME was intentionally and maliciously intended to and did hinder, delay, and defraud the Plaintiffs in their prosecution of the CONTRACT ACTION.

43. The intentional and malicious concealment of the INTEGRATED SCHEME from the Plaintiffs by the Defendants for 1½ years is a misrepresentation by omission.

44. It is believed that some or all of the ASSETS, other than those sold to CONOCO (the "REMAINING ASSETS"), may have been transferred for no or inadequate consideration to one or more Defendant, its immediate or remote parent, or an unrelated entity controlled by any of the foregoing.

45. It is believed that some or all of the REMAINING ASSETS may have been sold to one or more Defendant, its immediate or remote parent, an entity controlled by any of the foregoing or an unrelated entity.

46. It is believed that the DIVISIONAL ENTITIES may have been divested of all of the REMAINING ASSETS by transfer or sale.

47. SHELL is believed to be the penultimate United States remote parent of each of the CLIENTS, whose knowledge and consent was required for the implementation of the INTEGRATED SCHEME.

48. It is believed that SHELL conspired with PORTER WRIGHT and its CLIENTS in consenting to the PSA and the implementation of the INTEGRATED SCHEME.

49. It is believed that the proceeds of sale of any of the ASSETS, including the $9.5 Billion sale to CONOCO, were up-streamed by the Defendants to SHELL or to one or more of its subsidiaries, immediate or remote parent, or an unrelated entity controlled by any of the foregoing.

## COUNT I

### Transfers Fraudulent as to Present and Future Creditors
Tex. Bus. & Com. Code § 24.005

48. The foregoing Paragraphs 1 through 49 are incorporated here as if fully set forth.

WHEREFORE, Plaintiffs pray for relief as follows:

(i) that the Court find that the transfer of any of SWEPI's ASSETS, to any entity, including an allocation to a Divisional Entity, but excluding a transfer to a good faith purchaser for reasonably equivalent value without knowledge of the INTEGRATED SCHEME, is void;

(ii) that the Court order the Defendants to cause any of the ASSETS whose transfer is declared void to be re-vested in SWEPI by appropriate acknowledged instrument(s) and cause any diminution in value of any such asset to be paid to SWEPI together with interest, on which obligation the Defendants shall be jointly and severally liable.

(iii) that the Court order that the amount of the proceeds, if any, of the sale of any of the ASSETS whose transfer is not declared void, be paid to SWEPI by the Defendants, together with interest, on which obligation the Defendants shall be jointly and severally liable.

(iv) that the Court order that the amount of the proceeds of sale, if any, of any of the ASSETS whose transfer is declared void, be refunded to the transferee by the Defendants, together with interest, on which obligation the Defendants shall be jointly and severally liable.

(v) that the Court award such punitive damages as the Court deems just, and

(vi) that the Court grant such other relief as the Court deems just.

## COUNT II
## Transfers Fraudulent As to Present Creditors
Tex. Bus. & Com. Code § 24.006

49. The foregoing Paragraphs 1 through 49 are incorporated here as if fully set forth.

WHEREFORE, Plaintiffs pray for relief as follows:

(i) that the Court find that the transfer of any of SWEPI's ASSETS, to any entity, including an allocation to a Divisional Entity, but excluding a transfer to a good faith purchaser for reasonably equivalent value without knowledge of the INTEGRATED SCHEME, is void;

(ii) that the Court order the Defendants to cause any of the ASSETS whose transfer is declared void to be re-vested in SWEPI by appropriate acknowledged instrument(s) and cause any diminution in value of any such asset to be paid to SWEPI together with interest, on which obligation the Defendants shall be jointly and severally liable.

(iii) that the Court order that the amount of the proceeds, if any, of the sale of any of the ASSETS whose transfer is not declared void, be paid to SWEPI by the Defendants, together with interest, on which obligation the Defendants shall be jointly and severally liable.

(iv) that the Court order that the amount of the proceeds of sale, if any, of any of the ASSETS whose transfer is declared void, be refunded to the transferee by the Defendants, together with interest, on which obligation the Defendants shall be jointly and severally liable.

(v) that the Court award such punitive damages as the Court deems just, and

(vi) that the Court grant such other relief as the Court deems just.

## COUNT III

### Civil Conspiracy

50. The foregoing Paragraphs 1 through 49 are incorporated here as if fully set forth.

WHEREFORE, Plaintiffs pray for relief as follows:

(i)     that the Court award such General and Special Damages, including attorney fees as may be proved at trial.

(ii)     that the Court award such punitive damages as the Court deems just, and

(iii)     that the Court grant such other relief as the Court deems just.

## COUNT IV

### Fraud

51. The foregoing Paragraphs 1 through 49 are incorporated here as if fully set forth.

WHEREFORE, Plaintiffs pray for relief as follows:

(i)     that the Court award such General and Special Damages, including attorney fees, as may be proved at trial.

(ii)     that the Court award such punitive damages as the Court deems just, and

(iii)     that the Court grant such other relief as the Court deems just.

A JURY TRIAL IS DEMANDED

Respectfully submitted,

s/ Joseph E. Altomare
Joseph E. Altomare
Counsel for Plaintiffs