**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROL SPELLMAN SELTZ,** | ) | |
| **Executor of the Estate of** | ) | |
| **Harry J. Spellman,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | **Civil Action No. 1:23-cv-243-SPB** |
| | ) | |
| v. | ) | |
| | ) | |
| **SWEPI, LP,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Plaintiffs in this civil action are a group of forty-two individuals who previously sued (now defunct) SWEPI, LP and its general partner, Shell Energy Holding GP, LLC, in a lawsuit originally styled *Warner, et al. v. SWEPI LP*, et al., No. 1:19-cv-326 (W.D. Pa.) (the "*Warner* Action"). In the *Warner* Action, the plaintiffs claimed that SWEPI and Shell Energy Holding GP, LLC breached certain oil and gas leases by failing to pay signing bonuses. That litigation remains pending before this Court and has not yet proceeded to judgment.

In the instant litigation, the Plaintiffs have sued SWEPI, LP; SWEPI LLC; Shell Enterprises LLC ("ENTERPRISES"); Shell Energy Holding GP, LLC ("ENERGY"); Shell Legacy Holdings LLC ("LEGACY"); Permian Delaware Enterprises Holdings LLC ("PERMIAN"); Shell USA, Inc. ("SHELL USA"); ConocoPhillips ("CONOCO"); the law firm Porter Wright Morris & Arthur LLP ("PORTER WRIGHT"); and the law firm Norton Rose Fulbright US LLP ("NORTON ROSE"). The gist of Plaintiffs' claims is that the Defendants were all complicit in a scheme to transfer assets out of SWEPI, LP in order to avoid a potential $16.5 million judgment in the *Warner* Action. Plaintiffs theorize that this scheme was

1

accomplished through the transfer of SWEPI, LP's assets to PERMIAN, followed by the sale of PERMIAN and its assets to CONOCO for a sum of $9.5 billion, which sum was paid to ENTERPRISES. Plaintiffs' operative pleading sets forth various claims involving alleged fraud and conspiracy.

Pending before the Court in this case are two motions to dismiss the Amended Complaint, filed by the Defendants. ECF Nos. 4, 9, and 20. For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND[1]

Defendants SWEPI LLC, ENTERPRISES, LEGACY, and PERMIAN, are all limited liability companies organized under Texas law. First Amended Complaint ("FAC"), ¶¶3, 5. At times relevant to this litigation, ENTERPRISES owned 100% of the membership interest in SWEPI, LP and SWEPI LLC (sometimes jointly referred to as "SWEPI"). *Id.*, ¶11. SWEPI LLC, in turned, owned 100% of the membership interest in LEGACY, while LEGACY owned 100% of the membership interest in PERMIAN. *Id.*, ¶¶12-13. Defendant SHELL USA is a Delaware Corporation and, at all relevant times, was the penultimate domestic parent of the aforementioned entities. *Id.*, ¶10.

On September 20, 2021, ENTERPRISES and CONOCO entered into a Purchase and Sale Agreement (the "PSA") whereby CONOCO agreed to acquire a portion of SWEPI LP's assets for the purchase price of $9.5 Billion. First Amended Complaint ("FAC"), ¶ 17. The sale was subject to certain conditions, which required ENTERPRISES to do the following:

---

[1] The factual background is derived from the allegations in the First Amended Complaint. For present purposes, the Court accepts all of Plaintiffs' well-pled factual averments as true. The Court also construes all reasonable inferences arising from the alleged facts in favor of the Plaintiffs.

a. convert SWEPI LP into SWEPI LLC;

b. adopt and implement a plan of divisional merger, whereby SWEPI LLC would divide itself into three separate entities: *i.e.*, LEGACY, PERMIAN, and SWEPI LLC itself as a surviving entity;

c. cause SWEPI LLC to allocate to PERMIAN that portion of SWEPI, LP's assets that CONOCO agreed to purchase for $9.5 Billion.

FAC, ¶18.

ENTERPRISES fulfilled each of the foregoing conditions, and the PSA was consummated sometime on, or shortly after, November 16, 2021. FAC, ¶19. In accordance with the PSA, the $9.5 Billion sale proceeds were paid to ENTERPRISES, and ownership of PERMIAN was transferred to CONOCO. *Id.*, ¶20. No portion of the $9.5 Billion was paid to SWEPI. *Id.*, ¶21.

At all times relevant to these transactions, PORTER WRIGHT and NORTON ROSE (the "Law Firm Defendants") represented SHELL USA, ENTERPRISES, SWEPI LP, SWEPI LLC, ENERGY, LEGACY and PERMIAN (collectively, the "Clients"). FAC ¶22. Plaintiffs claim that the aforementioned conditions of the PSA (the "Conditions Precedent") were "elements of an integrated scheme" designed by PORTER WRIGHT and/or NORTON ROSE, "at the behest of and in collusion with the Clients," for the purpose of stripping SWEPI of $9.5 billion in assets and rendering SWEPI judgment proof. *Id.* at ¶¶23-25. Through this scheme, Plaintiffs claim, the "Divisional Entities" -- *i.e.,* SWEPI LLC, LEGACY, and PERMIAN -- obtained the "unrestricted right to transfer or upstream" SWEPI, LP's assets to "an immediate parent, remote parent, another of the Divisional Entities, or other entity." *Id.* at ¶26. Plaintiffs allege that the Conditions Precedent "were not contract elements required by CONOCO." *Id.* at ¶28. Instead, the Law Firm Defendants and their Clients inserted them into the PSA to create the false impression that the Conditions Precedent served a legitimate business purpose when, in fact,

their true purpose was to strip SWEPI of its assets and sell them to CONOCO without payment of the proceeds to SWEPI, LP. *Id.,* ¶¶28-33.

Plaintiffs further allege that "CONOCO had no legitimate business reason to require that the CONDITIONS PRECEDENT be fulfilled prior to the attachment of its obligation to consummate the PSA." FAC, ¶34. Still, despite "knowing the purpose" of the Conditions Precedent, CONOCO "tolerated their insertion into the PSA at the behest of, and in collusion with," the other Defendants. *Id.* at ¶35.

## II.    PROCEDURAL BACKGROUND

On August 17, 2023, Plaintiffs commenced this litigation against the SWEPI LP, SWEPI LLC, ENTERPRISES, ENERGY, LEGACY, PERMIAN, SHELL USA, CONOCO, and the Law Firm Defendants. The operative pleading at this juncture is Plaintiffs' First Amended Complaint, which includes four causes of action. ECF No. 4. Counts I and II allege that the Defendants engaged in fraudulent transfers in violation of, respectively, Sections 24.005 and 24.006 of Texas' Uniform Fraudulent Transfer Act. Count III asserts a claim of civil conspiracy and Count IV asserts a claim of common law fraud.[2]

On September 12, 2023, SWEPI LP, SWEPI LLC, ENTERPRISES, ENERGY, LEGACY, and SHELL USA, (collectively, the "Shell Defendants") filed a motion to dismiss the Amended Complaint. ECF No. 9. Defendants CONOCO and PERMIAN (the "CONOCO Defendants") filed their motion to dismiss on October 13, 2023. ECF No. 20. Both motions have been fully briefed and are ripe for resolution.

---

[2] On August 30, 2023, Plaintiffs voluntarily dismissed their claims against the Law Firm Defendants. ECF Nos. 7 and 8. Accordingly, those claims are no longer at issue in this case.

### III.   STANDARD AND SCOPE OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This requires the plaintiff to plead more than mere "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The reviewing court will "'disregard rote recitals of the elements of the cause of action, legal conclusions, and mere conclusory statements.'" *Metzgar v. Delaware Dep't of Nat. Res. & Env't Control*, 841 F. App'x 352, 354 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 677 (3d Cir. 2012)); *see Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (Court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (citation omitted).

When conducting a Rule 12(b)(6) analysis, the court "may consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526-27 (3d Cir. 2018). (internal quotation marks and citations omitted) (alteration in the original). In the context of this case, the Court's scope of review is limited to the Amended Complaint and relevant public filings in the *Warner* Action. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look

at public records, including judicial proceedings, in addition to the allegations in the
complaint.").

## IV.   DISCUSSION

### A.  Count I: Fraudulent Transfer as to Present and Future Creditors (Actual Fraud)

Plaintiff's first cause of action alleges that Defendants engaged in a fraudulent transfer as
to present and future creditors, in violation of Section 24.005 of Texas' Uniform Fraudulent
Transfer Act ("TUFTA").  That statute provides, in relevant part, that:

> A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's
> claim arose before or within a reasonable time after the transfer was made . . . , if
> the debtor made the transfer. . . with actual intent to hinder, delay, or defraud any
> creditor of the debtor[.]

Tex. Bus. & Comm. Code §24.005(a)(1).[3]  To obtain relief under this statute, a plaintiff must
prove: "(1) that it is a creditor, *i.e.*, has a claim against; (2) debtors; (3) that the debtors
transferred assets after, or a short time before, the plaintiff's claim arose; and (4) that those
transfers were made with the intent to hinder, delay, or defraud the plaintiff creditor." *Nat'l
Cleaners, LLC v. Aron*, No. 14-21-549-CV, 2022 WL 3973591, *4 (Tex. App. Sept. 1, 2022)
(citing authority).

The Shell Defendants contend that Count I is deficient because: (a) Plaintiffs filed a
shotgun complaint and/or otherwise failed to satisfy the *Twombly/Iqbal* standard of pleading, (b)
no "transfer" occurred as between SWEPI LP and the Shell Defendants, and (c) Plaintiffs have
not alleged that the "transferor" was unable to pay debts as a result of the alleged transfer.  The

---

[3] Plaintiffs' brief makes clear that they are asserting a claim only under §24.005(a)(1), and not under
§24.005(a)(2).  The Court will construe Plaintiff's Amended Complaint accordingly and will address only
those arguments and allegations that are relevant to Plaintiffs' §24.005(a)(1) claim. The Court declines to
dismiss the Amended Complaint based on Defendants' objection that Plaintiffs failed to specify in their
pleading whether they were proceeding under §24.005(a)(1) or §24.005(a)(2).

Conoco Defendants argue that Count I fails because: (a) none of the named Defendants are "debtors" within the meaning of TUFTA, (b) CONOCO cannot be liable as a good faith purchaser who gave reasonably equivalent value for SWEPI's assets, (c) alternatively, CONOCO is a "subsequent transferee" of the assets, (d) Plaintiffs have not pled the requisite intent to "hinder, delay or defraud," and (e) Plaintiffs have not pled that the transferor was unable to pay debts as a result of the transfer. We begin by considering those arguments that are potentially dispositive of Plaintiffs' claim.

### (i) Did a "Transfer" Occur?

The Shell Defendants argues that, under Texas law, there was no "transfer" of SWEPI, LP's assets and, therefore, no fraudulent transfer could have occurred. Neither side disputes that a "transfer" is necessary to Plaintiffs' claims in Count I of the Amended Complaint. *See Nat'l Cleaners,* 2022 WL 3973591, *4; *Western Oil & Gas J.V. Inc. v. Griffiths,* 2002 WL 32319043, at *3 (N.D. Tex. Oct. 28, 2002) (noting that a "transfer is an essential element of a fraudulent transfer").

In support of their position, the Shell Defendants cite to provisions of the Texas Business Organization Code ("TBOC") -- specifically, Section 10.106 ("General Effect of Conversions") and Section 10.008 ("Effect of Merger"). Regarding Plaintiffs' averment that SWEPI LP was converted to SWEPI LLC pursuant to TBOC §10.106, Defendants note that, under this statute:

> all rights, title, and interests to all property owned by the converting entity continues to be owned, subject to any existing liens or other encumbrances on the property, by the converted entity in the new organizational format *without: ... (C) any transfer or assignment having occurred.*

7

Tex. Bus. Org. Code §10.106(2) (emphasis added).  Regarding Plaintiff's averment that SWEPI

LLC was divided into three separate entities pursuant to a "plan of DIVISIONAL MERGER,"

ECF No. 4, ¶18(b), Defendants note the following language in TBOC §10.008:

> (a) When a merger takes effect:
>
> > (1) the separate existence of each domestic entity that is a party to the merger, other than a surviving or new domestic entity, ceases;
> >
> > (2) all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger *without*:
> >
> > > * * *
> >
> > > (C) *any transfer or assignment having occurred*;

Tex. Bus. Org. Code § 10.008 (emphasis added).

Based on these provisions, the SWEPI Defendants argue that conversion and mergers do

not result in the "transfer" or "assignment" of any assets in the surviving entity, under Texas law.

Defendants refer the Court to *TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d

137, 142 (Tx. Ct. App. 1999), wherein the court held that a corporate merger did not result in the

violation of a confidentiality agreement between "TXO" (an oil and gas exploration company)

and "PGI," a geophysical consulting firm that conducted seismic surveys for TXO's use.

Although TXO eventually merged with Marathon Oil Co., the court found that this did not result

in the prohibited sharing of data with a third party.  The court explained that the merger statutes

of Texas and other relevant jurisdictions

> provide that all rights, privileges, and obligations belonging to the merging corporation vest in the surviving corporation upon merger. All of these merger statutes are based upon the Model Business Code, the comments to which explicitly state that a merger is not a conveyance or transfer and that the surviving corporation

automatically becomes the owner of all real and personal property in the event of a merger.

999 S.W.2d at 142 (citing 3 Model Bus. Corp. Act Ann. § 11.06 cmt. (1996 Supp.)).  The court

noted that "[u]nder the merger statutes it is clear that all of TXO's interests vested in Marathon

immediately upon the merger. Further, under these provisions there is no transfer of the rights of

the merging corporation; rather, the rights vest automatically and without further action." *Id.*

In response, Plaintiffs cite the definitional section of the TUFTA, which broadly defines a

"Transfer" as

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of
> disposing of or parting with an asset or an interest in an asset, [including] payment
> of money, release, lease, and creation of a lien or other encumbrance. . . .

Tex. Bus. & Comm. Code § 24.002(12).  Plaintiffs posit that this Court must attempt to predict

how the Texas highest court would interpret the statutory provisions at play. They contend that

the Texas Supreme Court would consider the purpose of each statute and "would rule that

provisions of the Fraudulent Transfer Act[ ] trump the merger statute, thereby treating the

acquisition of assets as a transfer." ECF No. 17 at 10.

Neither side to this dispute has cited, nor has the Court located, caselaw that squarely

addresses the interplay between the cited provisions of the TBOC and the TUFTA.  However, in

a supplemental filing, Plaintiffs have referred the Court to numerous cases from other

jurisdictions which they believe support their position. *See* ECF No. 31 (citing *PPG Indus. v.

Guardian Indus. Corp.*, 597 F.2d 1090, 1095-1096 (6th Cir. 1979); *Cincom Sys. v. Novelis Corp.*,

581 F.3d 431, 438 (6th Cir. 2009); *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., Inc.*, 2007

U.S. Dist. LEXIS 37735 *14 (M.D. Tenn, 2007); *Nicolas M. Salgo Assocs. v. Continental Ill.

Props.*, 532 F. Supp. 279, 282 (D.D.C. 1981); *Pro-Edge L.P. v. Gue*, 419 F. Supp. 2d 1064 (N.D.

Iowa 2006); *Monsanto Co. v. Pioneer Hi-Bred Int'l*, 2001 U.S. Dist. LEXIS 27751 (E.D.

Missouri 2001); *Star Cellular Tel. Co. v. Baton Rouge CGSA*, 1993 Del. Ch. LEXIS 158 (1993);

*Lassman v. Simpson (In re Simpson)*, 2007 Bankr. LEXIS 4218 (D. Mass. Bankr. 2007).

Having fully reviewed the parties' arguments and authorities, the Court finds Defendants'

position more persuasive. Notably, none of the decisions cited by Plaintiffs involved an

interpretation of Texas law, or the TBOC in particular. Thus, the decisions cited by Plaintiff

provide little guidance concerning the proper application of the TUFTA in this case. In addition,

the court in *TXO Production Co.* specifically declined to follow the holdings of *PPG Industries*

and *Nicolas M. Salgo Associates, supra*, because it disagreed with both "the reasoning and

outcomes" of those decisions," 999 S.W.2d at 141, and considered their holdings to be "contrary

to the merger statutes." *Id.* at 141-42. The *TXO* court also drew a distinction between situations

where a company merges into an unrelated entity versus situations where the merger involved

merely a change in corporate form and did not present an increased risk to the non-merging

party. *Id.* at 141 (citing cases). In this case, unlike in *PPG Industries* and *Nicolas M. Salgo*

*Associates, supra*, the SWEPI Defendants are all related entities. Thus, the Court agrees with the

SWEPI Defendants that no "transfer" of assets occurred as between SWEPI, LP and any of the

SWEPI Defendants.

Still, even if SWEPI, LP's conversion into SWEPI LLC and/or SWEPI LLC's divisional

merger into three separate entities did not, in themselves, constitute a "transfer" of assets, that

does not end the inquiry. Under Third Circuit law, district courts should consider whether a

plaintiff is entitled to relief "under any reasonable reading of the complaint." *Kalu v. Spaulding*,

113 F.4th 311, 325 (3d Cir. 2024). Here, the Court finds that the sale of SWEPI, LP's assets (via

PERMIAN) to CONOCO *did* involve a plausible "transfer." Accordingly, the Court will analyze

the viability of Count I in that light.

(ii) <u>Must Plaintiffs Plead Insolvency Under Section 24.005(a)(1)?</u>

Both the Shell Defendants and the CONOCO Defendants challenge Count I on the grounds that Plaintiffs did not claim the "transferor" was unable to pay debts as a result of the alleged transfer. Relatedly, the Shell Defendants contend that Plaintiffs' claims fail because they did not -- and cannot -- plead any injury as a result of the alleged transfer, as LEGACY at all times has retained sufficient capitalization to satisfy any judgment in the *Warner* case.

On this point, Defendants' arguments are not well-taken. Section 24.005(a)(1) of TUFTA -- unlike Sections 24.005(a)(2) and Section 24.006 -- makes no specific reference to insolvency or the sufficiency of the transferor/debtor's assets. Rather, the elements of an actual fraud claim under Section 24.005(a)(1) are: "(1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *Thomas v. Hughes*, 27 F.4th 995, 1015 (5th Cir. 2022) (quoting *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019)). Defendants infer that insolvency is an inherent requirement under Section 24.005(a)(1), but the statute expressly provides that insolvency is but one of eleven *non-exclusive* circumstances that can be considered as circumstantial indicia of fraudulent intent. *See* Tex. Bus. & Com. Code §24.005(b).

Accordingly, allegations of insolvency are not a requirement for establishing a claim for actual fraud under Section 24.005(a)(1). *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 n.17 (Tex. 2015) ("Insolvency is not required to sustain a claim under section 24.005(a)(1) of TUFTA, which prohibits a transfer made 'with actual intent to hinder, delay, or defraud any creditor of the debtor[.]'"); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 680 (S.D. Tex. 2007) ("The issue of insolvency is an element of proof in sections 24.005(a)(2) and 24.006(a),

but it is immaterial to Smith's remaining claims under section 24.005(a)(1)."). *Accord In re Medina*, NO. 20-60045, 2021 WL 3214757, *2 (9th Cir. July 29, 2021) ("[T]he rule is, if the debtor transfers something of value, *and* the creditor proves it was done with the actual intent to hinder, delay, or defraud the creditor, *then* the creditor has been injured.") (emphasis in the original; court interpreting materially identical provision of California's Uniform Voidable Transactions Act as it relates to claims of actual fraud). Because LEGACY's insolvency is not a mandatory requirement for liability under Section 24.005(a)(1), Plaintiffs' failure to plead that fact is not dispositive of its claim.

### (iii) Are Any Defendants "Debtors" within the meaning of TUFTA?

The CONOCO Defendants argue that Plaintiffs' fraudulent transfer claims fail as a matter of law because none of the named Defendants are "Debtors" within the meaning of the statute. As noted, a claim of actual fraud under Section 24.005(a)(1) requires that a transfer be made by a "debtor" as defined by TUFTA. *See* §24.005(a)(1); *Thomas*, 27 F.4th at 1015 (enumerating the elements of a claim for actual fraudulent intent).

A "debtor" is statutorily defined as "a person who is liable on a claim." *See* Tex. Bus. & Com. Code § 24.002(6). According to the CONOCO Defendants, the Plaintiffs have not, and cannot, allege that any of the Defendants in this case are "debtors" under TUFTA because the Contract Action is still pending and there has been no determination of liability in the *Warner* Action. Therefore, Defendants submit that Count I should be dismissed with prejudice.

In this Court's view, the CONOCO Defendants interpret the statutory definition of "debtor" too narrowly. Under the TUFTA, a creditor is a "person ... who has a claim," and a debtor is a "person who is liable on a claim." Tex. Bus. & Com. Code §24.002(4), (6). A

"claim" is a "right to payment ..., whether or not the right is reduced to judgment." *Id.*

§24.002(3).  As one court has explained:

> if the court were to accept the [ ] Defendants' contention that "liable" means "bound or obligated by law" (and assume that a debtor is not "bound or obligated in law" until it has a judgment against it), the [ ] Defendants' definition would restrict "claim" to judgments. The statute clearly states, however, that a "claim" includes the filing of a disputed suit not yet reduced to judgment. The [ ] Defendants' definition of "liable" (limited to judgments) would thus be inconsistent with the TUFTA definition of "claim" (which includes disputed rights to payment not reduced to judgment). *See* Tex. Bus. & Com. Code Ann. § 24.002(3).

*Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, No. 3:21-CV-0327-D, 2021 WL 5416603, at *6 (N.D. Tex. Nov. 19, 2021).  *See also Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-076-H, 2021 WL 1399296, at *7 (N.D. Tex. Feb. 1, 2021) ("Salazar is a debtor because Vestas has a legal claim against him.").

Here, Plaintiffs aver that SWEPI, LP (the original "debtor") was converted to SWEPI, LLC which was then subdivided into three entities, including itself (SWEPI, LLC), PERMIAN, and LEGACY.  Plaintiff's allegations give rise to a plausible inference that, at the very least, LEGACY (as SWEPI, LP's successor-in-interest) -- and perhaps all three "Divisional Entities" -- are "debtors" within the meaning of the TUFTA.  As a result, this element of Plaintiffs' actual fraud claim under Section 24.005(a)(1) is satisfied.  The Court will not dismiss Count I on the basis of the CONOCO Defendants' assertion that none of the named Defendants herein are "debtors."[4]

---

[4] As for the CONOCO Defendants, they are properly named parties to this lawsuit, even if they are not themselves "debtors."  "The fundamental remedy for a creditor who establishes a fraudulent transfer is recovery of the property from the person to whom it has been transferred." *Challenger Gaming Sols., Inc. v. Earp*, 402 S.W.3d 290, 294–95 (Tex. App. 2013) (citation omitted).  Alternatively, a creditor may obtain an attachment against the transferred asset, seek an injunction against further disposition of the asset, or request the appointment of a receiver to take charge of the asset, among other equitable remedies. *See* Tex. Bus. & Com. Code 24.008(a).  If the creditor has obtained a judgment against the debtor, the creditor may also levy execution on the asset transferred or its proceeds. *Id.* § 24.008(b).  Under section 24.009(b), a creditor who obtains an avoidance of the transfer pursuant to section 24.008 may recover a

(iv) <u>Is CONOCO Immune From Liability As a Good Faith Purchaser</u>?

The CONOCO Defendants also assert that Plaintiffs' fraudulent transfer claim fails as a matter of law because transfers are not voidable under Section 24.005(a)(1) of the TUFTA as "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *See* Tex. Bus. & Com. Code §24.009(a) (emphasis added). As Defendants see it, "Plaintiffs judicially admit that ConocoPhillips paid a reasonably equivalent value for the subject assets" because the "Amended Complaint states that the assets at issue were worth 'at least $9.5 Billion' and admits that Conoco paid $9.5 billion in cash for the assets." ECF No. 21 at 13 (citing Amended Compl. ¶¶ 16, 20). Defendants posit that, not only is the Amended Complaint devoid of averments stating that CONOCO did not purchase the assets for "reasonably equivalent value," but it also lacks averments establishing that CONOCO's purchase of the assets was not an arm's length transaction or not in the ordinary course of itsbusiness.

The Court finds this argument unpersuasive. The protection afforded by Section 24.009(a) of the TUFTA is in the nature of an affirmative defense. *See Wirt v. LaBelleCo Fab, LLC*, No. 09-22-00099-CV, 2024 WL 1451166, at *12 (Tex. App. Apr. 4, 2024) ("Section 24.009 provides an affirmative defense to 'a person who took [the asset] in good faith and for reasonably equivalent value.'"). Accordingly, "[i]f the person establishes the defense, then the transfer 'is not voidable under Section 24.005(a)(1)' and the transferee may keep the transferred asset. *Id.* §24.009(a)." *Id.* Because Section 24.009(a) provides an affirmative defense to a good

---

money judgment against the first transferee, the person for whose benefit the transfer was made, or any subsequent transferee other than a good faith transferee who takes for value or from any subsequent transferee. Tex. Bus. & Com. Code §24.009(b); *see also Challenger Gaming Sols., Inc. v. Earp*, 402 S.W.3d 290, 294–95 (Tex. App. 2013); *Rocklon, LLC v. Paris*, No. 09-16-00070-CV, 2016 WL 6110911, at *3 (Tex. App. Oct. 20, 2016). Accordingly, the CONOCO Defendants are proper party defendants to this action for purposes of Plaintiffs' fraudulent transfer claims.

14

faith purchaser, Plaintiffs do not have the burden of pleading the inapplicability of that provision in the first instance.

Setting that procedural issue aside, the Court does not agree that the averments in the Amended Complaint establish, as a matter of law, CONOCO's status as a good faith purchaser. On the one hand, the Court agrees that Plaintiffs have alleged CONOCO paid reasonably equivalent value for the assets in question (namely $9.5 billion). On the other hand, however, the averments plausibly establish a lack of good faith. Here, Plaintiffs have alleged that: (i) the transaction could have been accomplished by the direct sale of SWEPI, LP's assets to CONOCO (with payment presumably going directly to SWEPI or its corporate successor(s)), (ii) the only purpose for inserting the Conditions Precedent into the PSA was to strip SWEPI of assets and to avoid payment of the proceeds to SWEPI, (iii) CONOCO had no legitimate business reason to require the Conditions Precedent as part of the PSA, and (iv) CONOCO, despite knowing the illicit purpose of the Conditions Precedent, allowed them to be included in the PSA at the behest of the SWEPI Defendants and their lawyers. ECF No. 32-35. For present purposes, these allegations supply a plausible basis for inferring that CONOCO did *not* take SWEPI, LP's assets in good faith."

In sum, to the extent CONOCO seeks dismissal of Count I based on the defense afforded by Section 24.009(a), CONOCO's motion will be denied. However, the denial will be without prejudice to CONOCO's right to reassert this defense at a later point in these proceedings, if appropriate.

### (v) Is CONOCO Immune From Liability As a "Subsequent Transferee?"

Alternatively, the CONOCO Defendants seek dismissal of Count I on the basis of its status as a "subsequent transferee" of SWEPI, LP's assets. This defense is, again, predicated on

Section 24.009(a) of TUFTA, which makes transfers non-voidable as against "any subsequent transferee or obligee." *See* TUFTA §24.009(a). Inasmuch as the Amended Complaint alleges that SWEPI, LP's assets initially went to SWEPI LLC (see Amended Complaint, ¶ 18(a)), then to PERMIAN (see Amended Complaint, ¶ 18(c)), and then ultimately to CONOCO (see Amended Complaint, ¶ 20), Defendants contend that CONOCO is a "subsequent transferee" under TUFTA.

As noted above, Plaintiffs have no burden at the pleading stage to establish the inapplicability of CONOCO's affirmative defense. Additionally, the Court has found that, for present purposes, Plaintiffs alleged a "transfer" within the meaning of the TUFTA, when certain of SWEPI, LP's assets were sold by ENTERPRISES to CONOCO, in exchange for $9.5 billion. To that extent, at least, Plaintiffs have adequately pled CONOCO's status as a "transferee," rather than a "subsequent transferee." The Court will deny the CONOCO Defendants' motion to dismiss, based on the "subsequent transferee" defense; however, the dismissal will be without prejudice and may be raised at a later stage of these proceedings, if applicable.

(vi) Did Plaintiffs Fail to Plead the Requisite Intent to "Hinder, Delay or DeFraud?"

The CONOCO Defendants also argue that Count I is deficient because the Plaintiffs have not alleged that their "debtors" acted with intent to "hinder, delay or defraud" them. Relatedly, the SWEPI Defendants contend that Plaintiffs failed to plead fraud with the requisite particularity, as required by Federal Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Actual fraudulent intent is necessary to establish liability under Section 24.005(a). *Nat'l Cleaners, LLC*, 2022 WL 3973591 at *4. Because direct proof of actual intent to defraud is often unavailable, a plaintiff creditor may offer proof through circumstantial evidence. *Id.*; *Walker v.*

*Anderson*, 232 S.W. 3d 899, 914 (Tex. App. 2007).  Section 24.005(b) of TUFTA provides a list

of eleven, nonexclusive indicia of fraudulent intent, often referred to as "badges of fraud." *See*

*Walker*, 232 S.W. 3d at 914.  "[C]onsideration may be given, among other factors, to whether:

> (1) the transfer or obligation was to an insider;

> (2) the debtor retained possession or control of the property transferred after the transfer;

> (3) the transfer or obligation was concealed;

> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) the transfer was of substantially all the debtor's assets;

> (6) the debtor absconded;

> (7) the debtor removed or concealed assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code § 24.005(b).  "Evidence of a single 'badge of fraud' does not

conclusively demonstrate intent, but a confluence of several presents a strong case of fraud."

*Nat'l Cleaners*, 2022 WL 3973591, at *4. Intent to defraud is ordinarily a fact question. *Id.*

   Here, Plaintiffs contend that they have met their pleading obligation by alleging the third,

fourth and fifth "badges of fraud," specifically: that the transfer or obligation was concealed; that

before the transfer was made or obligation was incurred, the debtor had been sued or threatened

with suit; and that the transfer was of substantially all the debtor's assets.

On this record, the Court agrees that Plaintiffs have minimally satisfied their burden of alleging an intent to defraud. Defendants insist that there could have been no concealment concerning the sale of SWEPI, LP's assets in light of the parties' public filings and/or representations to the Court in the *Warner* Action. But those are matters that must be assessed on a more developed factual record. Given that intent to defraud is a factual issue, *Nat'l Cleaners*, 2022 WL 3973591, at *4, and one that is highly dependent on the circumstances of the case, the Court will deny the Defendants' motion to dismiss as it relates to Count I of the Amended Complaint. However, the dismissal of those motions will be without prejudice, and the Defendants will be permitted to reassert their arguments concerning the sufficiency of Count I at a later point in the proceedings, if appropriate.

### B. Count II: Fraudulent Transfer as to Present Creditors (Constructive Fraud)

Plaintiffs' second cause of action alleges that Defendants engaged in a constructive fraudulent transfer in violation of TUFTA Section 24.006. Pertinently, subsection (a) of that statute[5] states:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

Tex. Bus. & Comm. Code §24.006(a).

The Defendants raise many of the same challenges as to Count II as were raised with respect to Count I. For present purposes, the Court will not repeat its analysis relating to (i)

---

[5] Plaintiffs have made clear in their briefing that they are only asserting a claim under Subsection 24.006(a). Therefore, the Court will not address any arguments unique to Subsection 24.006(b), including the Shell Defendants' argument that any claim under that provision is time-barred.

whether any of the Defendants are "Debtors," (ii) whether a "transfer" within the meaning of TUFTA occurred, and/or (iii) whether CONOCO is a good faith purchaser who gave reasonably equivalent value in exchange for SWEPI's assets. As to those issues, the Court's prior analysis and conclusions remain unchanged.

On the other hand, further comment is warranted with respect to the issue of insolvency. As they did with Count I, the Defendants challenge the sufficiency of Count II, arguing that Plaintiffs have not alleged that the "debtor" was insolvent at the time of the transfer or became insolvent as a result of it. Defendants are correct that, for purposes of a constructive fraud claim, Plaintiffs must allege that the "debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." Tex. Bus. & Comm. Code §24.006(a).

Plaintiffs do not dispute that insolvency is a necessary element of their constructive fraud claim, but they argue that insolvency has been sufficiently pled. Specifically, they point to allegations in the Amended Complaint establishing that "SWEPI was stripped of all its assets as a result of the implementation of the Conditions Precedent." ECF No. 27 at 9 (citing Amended Complaint ¶¶18-19, 24-25).

This argument is unavailing. For the reasons previously discussed, the Court has concluded that no "transfer" of SWEPI, LP's assets occurred as a result of its conversion into SWEPI, LLC and SWEPI, LLC's divisional merger. Therefore, even if SWEPI, LP itself retained no assets (because it ceased to exist), that fact is of no legal moment because no "transfer" of assets occurred, within the meaning of TUFTA, until SWEPI, LP's assets were transferred to CONOCO, pursuant to the PSA. But there is no allegation that LEGACY, as

SWEPI LP's successor-in-interest,[6] became insolvent as a result of that transfer, nor it is alleged that LEGACY will be unable to pay any judgment that may be obtained in the *Warner* Action. To the extent the Amended Complaint addresses any SWEPI assets that were *not* sold to CONOCO, it offers only speculative assertions that, *e.g.*, those assets "*may have been sold,*" or "*may have been transferred* for no or inadequate consideration to one or more Defendant, its immediate or remote parent, or an unrelated entity controlled by any of the foregoing, ECF No. 4, ¶¶ 46-47 (emphasis supplied), or the Divisional Entities "*may have divested themselves* of all or part of" such assets "by transfer or sale." Id. at ¶48 (emphasis supplied). Because Plaintiffs have not alleged that SWEPI's successor-in-interest was insolvent at the time of the alleged transfer, or that it became insolvent as a result of the transfer, Count II is insufficiently pled and will be dismissed.

### C. *Count IV: Common Law Fraud*

We next address Count IV of the Amended Complaint, which asserts a claim of common law fraud. To state a claim for fraud, Plaintiffs must allege

> (1) "a representation" which is (2) "material to the transaction at hand," (3) "made falsely, with knowledge of its falsity or recklessness as to whether it is true or false," and (4) made "with the intent of misleading another into relying on it"; (5) "justifiable reliance on the misrepresentation"; and (6) that "the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994). But in addition, a plaintiff in federal court, to comply with Rule 9(b), must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" and must state "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (brackets and internal quotation marks omitted).

---

[6] The Court takes judicial notice of the fact that LEGACY has been substituted in the Warner Action as the appropriate Defendant, based on its status as SWEPI, LP's corporate successor-in-interest. *See Warner, et al. v. SWEPI, LP, et al.*, No. 1:19-cv-326 (W.D. Pa.) at ECF No. 285.

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018).  To state a fraud claim based on the intentional non-disclosure of a material fact, Plaintiffs must allege the same elements listed above, as well as a duty on the part of the Defendants to disclose the omitted information. *See Duquesne Light Co., v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d. Cir. 1995).

Defendants contend that Plaintiffs have not alleged facts that would satisfy any of the elements of their fraud claim, including a material misrepresentation or a material omission where there was a duty to disclose.  Defendants further contend that the Amended Complaint fails to meet the heightened pleading requirements of Rule 9(b) that apply to allegations of fraud.

Plaintiffs respond that the "representation element" of their fraud claim "arises from the concealment . . . of the fact that SWEPI was stripped of all of its assets thereby leaving it judgment proof" in the *Warner* Action. ECF No. 27 at 14.  Plaintiffs' citation to *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Undergrounds Storage Tank Indemnification Fund*, 82 A.3d 485, 500-501 (Pa. Commw. Ct. 2013), suggests that they are attempting to state a claim for *fraudulent concealment*, a tort which requires neither an affirmative misrepresentation by the defendant nor a duty on the part of the defendant to inform.  However, this line of argument is unavailing.

"Fraudulent concealment in Pennsylvania is governed by Section 550 of the Restatement (Second) of Torts, which provides that a 'party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information' is liable for the pecuniary loss the other party incurred as a result of the concealment." *Farhangui v. Grossinger*, 2020 WL 5121112, at *2 (E.D. Pa. Aug. 31, 2020) (quoting Restatement (Second) of Torts §550)) (emphasis omitted); *see also Nelson v. Am. Honda Motor Co.*, No. 1:18-cv-210, 2021 WL 2877919, at *12 (W.D. Pa. May 17, 2021), *report and recommendation adopted*, 2021 WL 2646840 (W.D. Pa. June 28, 2021); *Roberts v. Estate of Barbagallo*, 531 A.2d 1125, 1130 (Pa.

Super. Ct. 1987). Fundamentally, a fraudulent concealment claim requires "[o]ne party to a transaction [to] intentionally prevent[ ] the other from acquiring material information." *Chughtai v. Bid 4 Assets, Inc.*, No. 2:23-CV-02518-JDW, 2024 WL 1052893, at \*4 (E.D. Pa. Mar. 11, 2024) (quoting *Youndt v. First Nat. Bank of Port Allegheny*, 868 A.2d 539, 549 (Pa. Super. Ct. 2005)).

Here, Plaintiffs have not alleged that they themselves were parties to the allegedly fraudulent transaction. Nor have Plaintiffs alleged that Defendants actively or intentionally prevented them from learning about the PSA between ENTERPRISES and CONOCO. *See Chughtai*, 2024 WL 105293, at \* 4 (no fraudulent concealment claim stated where plaintiff did not suggest that the defendant had prevented it from learning about an unsatisfied mortgage on the property plaintiff had purchased); *Youndt*, 868 A.2d at 550 (no claim for fraudulent concealment stated where purchaser of property did not allege that defendant had attempted to conceal defect in property's sewer system). Additionally, Plaintiffs have not alleged pecuniary harm as a result of Defendants' conduct. *See Farhangui v. Grossinger*, 2020 WL 5121112, at \*2; Restatement (Second) of Torts §550.

Because Plaintiffs' allegations do not plausibly state a claim for fraudulent concealment, Count IV is subject to dismissal. Further, the defects in Plaintiffs' claim cannot be cured through further amendment; therefore, the dismissal will be with prejudice.

### D. Count III: Civil Conspiracy

Lastly, the Court considers Plaintiffs' third cause of action for civil conspiracy. To state a cause of action under this theory, Plaintiffs must allege: "'(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose;

and (3) actual legal damage.'" *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 312 (E.D. Pa. 2008) (quoting *Estate of Werner v. Werner*, 781 A.2d 188, 191 (Pa. Super. Ct. 2001). In addition to these elements, there must be "malice or intent to injure." *Id.* at 313. "Bald assertions that certain actions were malicious are insufficient; it must be alleged that the "*sole* purpose of the conspiracy was to injure the Plaintiffs." *Id.* at 312 (citing authority).

Defendants contend that the averments in the Amended Complaint fail to establish these elements. The Court agrees that no claim for civil conspiracy has been stated.

Plaintiffs posit that the lawful act in this case was the transfer of assets from one entity to another, but the unlawful purpose was the intention to strip SWEPI of its assets so as to make it judgment proof in the *Warner* Action. The overt action, Plaintiffs say, was "the facilitation of those transfers by the execution and performance of the PSA." ECF No. 27 at 16. But even if, *arguendo*, the Court were to accept Plaintiffs' position at face value, it would still find that Plaintiffs have failed to plead actual legal damage as a result of the alleged conspiracy.

Plaintiffs maintain that their injury is "the loss of any of SWEPI's assets from which to secure payment" in the *Warner* Action. ECF No. 27 at 16. But that theory fails to establish actual legal damage for at least two reasons. First, Plaintiffs have not yet secured a judgment in the *Warner* Action, and may never do so, depending on the outcome of that litigation. *Accord Shuler Drilling Co., Inc. v. Disiere Partners LLC*, No. 3:22-CV-2062-X, 2023 WL 4497264, at *2 (N.D. Tex. July 12, 2023) ("[A] mere general creditor without a lien has no interest in the debtor's property, and hence is not legally injured by any conspiracy with the debtor to aid him in disposing of his property.") (quoting *Stonecipher's Estate v. Butts' Estate*, 591 S.W.2d 806, 808 (Tex. 1979)) (cleaned up). Second, as discussed, Plaintiffs have not pled a plausible basis for inferring insolvency on the part of SWEPI's successor-in-interest. Thus, Plaintiffs' have not

alleged that they suffered any actual legal damage as a result of the alleged conspiracy.  Because Count III is inadequately pled it must be dismissed.

## V.   CONCLUSION

As the result of the foregoing analysis, the Court concludes that only Count I of the Amended Complaint states a viable claim.  The Court has considered, but rejects, Defendants' arguments that the Amended Complaint is an impermissible shotgun pleading and/or that Count I is inadequately pled under federal pleading standards.  The deficiencies that the Court has discussed relative to Plaintiffs' fraud claim at Count IV cannot be cured through further amendment; therefore, the fraud claim will be dismissed with prejudice.  The deficiencies that the Court has discussed relative to Counts II and IV involve questions as to whether Plaintiffs will ultimately prevail in the *Warner* Action and, if so, whether LEGACY (SWEPI's corporate successor-in-interest) is sufficiently capitalized to fund any forthcoming judgment.

Given these uncertainties, the Court will dismiss Counts II and IV of the Amended Complaint without prejudice, so that Plaintiff may have an opportunity at a later point in time to replead those claims, if future circumstances demonstrate that there is a basis for doing so.  In the meantime, the Court will direct the parties to show cause why the present litigation should not be stayed, pending resolution of Plaintiffs' claims in the *Warner* Action and related litigation in *Walney, et al. v. Shell Legacy Holdings, LLC, et al.*, No. 1:13-cv-102 (W.D. Pa).

An appropriate order follows.

Susan Paradise Baxter
United States District Judge